UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
GALINA SHAMANSKAYA and RAISA
KARAPETYAN,

               Plaintiffs,

  - against -

THONG KIM MA,

               Defendant.
------------------------------------------------------X
GOLD, S., U.S.M.J.:

MEMORANDUM
AND ORDER
07-CV-1974 (RRM)

## Introduction

This diversity action arises from a motor vehicle accident between plaintiffs Galina Shamanskaya ("Shamanskaya") and Raisa Karapetyan ("Karapetyan") (collectively, "plaintiffs"), and defendant, Thong Kim Ma ("Ma"). On March 28, 2004, a motor vehicle owned and operated by Ma collided with a vehicle owned and operated by Shamanskaya in Brooklyn, New York. Shamanskaya and a passenger, Karapetyan, both allege that they sustained serious injuries within the meaning of Section 5102(d) of the New York State Insurance Law (also referred to as the "No-Fault Law") as a result of the accident. Plaintiffs seek damages for the personal injuries they claim to have suffered.[1] Docket Entry 1, Verified Complaint. Shamanskaya also claims lost earnings in the amount of $1,758.00. Docket Entry 18, Defendant's Local Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 10.

Defendant has moved for summary judgment on the ground that neither plaintiff sustained a serious injury within the meaning of New York State Insurance Law § 5102(d).

---

[1] Plaintiffs also named Marvin Falcon and Janet Cameron as defendants, but claims against these parties were dismissed on May 7, 2008. Docket Entry 14.

Docket Entries 17-26. For the reasons set forth below, defendant's motion for summary judgement is denied.[2]

### Facts

On March 28, 2004, plaintiffs and defendant were involved in a motor vehicle accident. Def. 56.1 Stmt. ¶ 4. As a result of the accident, Shamanskaya, who was born in 1943, alleges injuries to her lumbar spine and right knee, and Karapetyan, who was born in 1956, alleges injuries to her lumbar spine, cervical spine and to both knees. *Id.* ¶¶ 5-6; Docket Entry 17, Ex. D (Plaintiffs' Answers to Interrogatories). Immediately following the accident, both plaintiffs refused to go to the hospital. Def. 56.1 Stmt. ¶ 7. Three days later, plaintiffs sought medical treatment from Dr. Yelena Istkhoki. Docket Entry 19, Declaration in Support ("Def. Decl.") ¶¶ 6-7. Both plaintiffs underwent a regimen of physical therapy until September of 2004, when they ceased receiving medical treatment for the alleged injuries resulting from the accident. *Id.* ¶¶ 8-9. Karapetyan was involved in another motor vehicle accident on October 8, 2007. Def. 56.1 Stmt. ¶ 24.

In support of his motion, defendant has submitted, among other things, reports from Dr. Jay Garsman, who performed an MRI of Shamanskaya's lumbar spine and right knee and an MRI of Karapetyan's lumbar spine (Docket Entry 17, Exs. G & H; Docket Entry 26, Ex. A), affirmed reports from Dr. Steven Mendelsohn, who reviewed the MRIs taken by Dr. Garsman (Docket Entry 17, Exs. I, J, K & O), affirmed reports from Dr. Daniel Feuer, who examined plaintiffs on April 28, 2008 (Docket Entry 17, Exs. L & M), and a report by Dr. Istkhoki from

---

[2] Jurisdiction to decide this motion is based on the consent of the parties. Docket Entry 21.

her examination of Karapetyan after the accident on October 8, 2007 (Docket Entry 17, Ex. N). In opposition, plaintiffs submitted affirmations from their treating physician, Dr. Istkhoki. Docket Entry 23, Exs. A & B. The relevant findings are summarized below.

### A. *Galina Shamanskaya*

Shamanskaya testified at her deposition that, since the accident, she is unable to lift more than three or four pounds, has difficulty bending, and experiences substantial pain in her knee when walking down stairs. Docket Entry 17, Ex. E at 52. Shamanskaya also has trouble getting out of bed and has leg pains that keep her awake at night. *Id*. at 53. According to her testimony, Shamanskaya did not have back or knee pain prior to the March 28, 2004 accident. *Id*. at 51.

Dr. Itskhoki states in her affirmation that she diagnosed Shamanskaya with the following injuries during an initial examination on April 2, 2004: (1) acute cervical strain/sprain; (2) acute thoracic strain/sprain; (3) possible cervical radiculopathy; (4) acute lumbosacral strain/sprain; (5) possible lumbosacral radiculopathy; (6) post-traumatic cephalgia; (7) right knee strain/sprain. Docket Entry 23, Affidavit in Opposition, Ex. A ("Physician's Aff. re: Shamanskaya") ¶ 3. Dr. Itskhoki also conducted range of motion tests and noted a 46% reduction of range of motion in Shamanskaya's cervical spine, a 24% reduction of range in her lumbosacral spine, and 7% reduction of range in her right knee. *Id.* ¶ 4.

Dr. Istkhoki ordered an MRI of Shamanskaya's lumbar spine and right knee. Dr. Garsman, who analyzed the MRI results, found disc bulges with left foraminal compromise at L3-L4, L4-L5 and L5-S1, and noted "diffuse desiccation and multilevel degenerative disease" throughout Shamanskaya's spine. Docket Entry 26, Ex. A. On the MRI of Shamanskaya's right knee, Dr. Garsman found joint effusion, severe chondromalacia of the patella, and noted the

presence of degenerative changes. Docket Entry 17, Ex. G. Dr. Istkhoki also ordered an EMG of Shamanskaya's lumbar spine, which revealed "bilateral L5-S1 radiculopathy." Physician's Aff. re: Shamanskaya ¶ 7.

Shamanskaya underwent physical therapy for six months after the accident, at which point Dr. Itskhoki concluded that "further physical therapy would be futile and that the injuries and limitations suffered by [Shamanskaya] were permanent and no complete cure or rehabilitation was likely." *Id.* ¶ 8. The most recent examination of Shamanskaya by Dr. Istkhoki on June 7, 2008, revealed a 23% loss of range of motion in her lumbosacral spine, a sensory deficit in her right foot and decreased right Achilles reflex. *Id.* ¶¶ 11-12. Dr. Itskhoki concluded that Shamanskaya "has suffered and will continue to suffer a permanent significant limitation of the use of her lumbar spine and right knee" and that these injuries were directly and proximately caused by the accident on March 28, 2004. *Id.* ¶¶ 14, 16.

Defendant's expert radiologist, Dr. Mendelsohn, found that Shamanskaya's lumbar spine showed "age related lumbar degenerative changes" and concluded that her injuries were "developmental in nature and not causally related to trauma." Docket Entry 17, Ex. J. Dr. Mendelsohn also found that Shamanskaya's right knee showed "marked chondromalacia patella" and "small joint effusion." *Id.* Ex. I. Dr. Feuer, a neurologist who examined Shamanskaya on defendant's behalf on April 28, 2008, found that Shamanskaya "[did] not demonstrate any objective neurological disability or neurological permanency which is causally related to the accident of 3/28/04." *Id*. Ex. L.

B.  *Raisa Karapetyan*

Karapetyan testified that, since the accident, she is unable to lift anything heavier than

her handbag, and cannot sit or stand for extended periods. *Id*. Ex. F at 40. Karapetyan further testified that she still experienced frequent substantial back pain more than three years after the accident. *Id*. at 56-57.

In her affirmation, Dr. Itskhoki states that she diagnosed Karapetyan with the following injuries during an initial examination on April 2, 2004: (1) acute cervical strain/sprain; (2) acute thoracic strain/sprain; (3) possible cervical radiculopathy; (4) acute exacerbation of chronic lumbosacral pain; (5) possible lumbosacral radiculopathy; (6) dizziness; (7) both knee strain/sprain. Docket Entry 23, Affidavit in Opposition, Ex. B ("Physician's Aff. re: Karapetyan") ¶ 3. Dr. Itskhoki also conducted range of motion tests and noted a 32% reduction of range of motion in Karapetyan's cervical spine, a 31% reduction of range in her lumbosacral spine, a 7% reduction of range in her right knee and an 11% reduction in her left knee.[3] *Id.* ¶ 4. An MRI of Karapetyan's lumbar spine revealed a disc bulge at L4-L5 level, noted by Dr. Garsman and by Dr. Istkhoki. *Id*. ¶ 6; Docket Entry 17, Ex. H. Dr. Iskhoki also noted that an EMG revealed L4-L5 radiculopathy on the right. Physician's Aff. re: Karapetyan ¶ 7.

Karapetyan underwent physical therapy for five months after the accident at which point Dr. Itskhoki concluded that "further physical therapy would be futile and that the injuries and limitations suffered by [Karapetyan] were permanent and no complete cure or rehabilitation was likely." *Id.* ¶ 8. The most recent examination of Karapetyan by Dr. Istkhoki on June 7, 2008, revealed a 26% loss of range of motion in her lumbosacral spine and decreased Achilles reflexes bilaterally. *Id.* ¶ 10. Dr. Itskhoki also found that Karapetyan's lower back pain was "aggravated

---

[3] Although the report states that the 11% loss is related to the right knee, the Court assumes that Dr. Itskhoki meant the left knee, given the context of the statement. *See* Physician's Aff. re: Karapetyan ¶ 4.

by [the] subsequent accident on October 8, 2007." *Id.* ¶ 9. Dr. Itskhoki concluded that Karapetyan "has suffered and will continue to suffer a permanent significant limitation of the use of her lumbar spine which was aggravated by a subsequent injury" and that this injury was directly and proximately caused by the accident on March 28, 2004. *Id.* ¶¶ 12, 14.

On review of Karapetyan's MRI, Dr. Mendelsohn, defendant's expert, found "no evidence of focal disc herniation or any abnormality causally related to trauma." Docket Entry 17, Ex. K. Dr. Feuer examined Karapetyan on defendant's behalf on April 28, 2008, and found that Karapetyan "[did] not demonstrate any objective neurological disability or neurological permanency which is causally related to the accident of 3/28/04." *Id*. Ex. M.

**Legal Standards**

*A.    Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). In reaching a summary judgment determination, the court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc*., 933 F.2d 162,167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact; once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514;

*Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations, however, are insufficient and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

B.  *New York's No-Fault Law*

New York's "No-Fault Law" was enacted to promote prompt resolution of personal injury claims resulting from motor vehicle accidents, to limit costs to consumers and to alleviate burdens on the courts. *Pommells v. Perez*, 830 N.E.2d 278, 280, 4 N.Y.3d 566, 570-71 (2005). Under the law, a plaintiff is precluded from recovering for non-economic loss resulting from a motor vehicle accident unless the plaintiff can demonstrate that she suffered a "serious injury." N.Y. INS. LAW § 5104(a) (McKinney 2008). A "serious injury" is defined as: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss of use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member [hereinafter "permanent consequential limitation"]; (8) significant limitation of use of a body function or system [hereinafter "significant limitation"]; (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment. *Id*. § 5102(d).

Plaintiffs do not specify which category or categories of serious injuries listed in Section 5102(d) applies in their case. The only categories applicable to this case, however, are (7)

7

permanent consequential limitation, and (8) significant limitation.[4]

The New York Court of Appeals has held that determining "[w]hether a limitation of use or function is "significant" or "consequential" (i.e., important . . .) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Dufel v. Green*, 647 N.E.2d 105, 107, 84 N.Y.2d 795, 798 (1995) (internal citations omitted). A permanent consequential limitation requires proof of "permanency," *Altman v. Gassman,* 202 A.D.2d 265, 608 N.Y.S.2d 651 (1st Dep't 1994), whereas a significant limitation only requires a showing that the injury is something more than a "minor, mild or slight limitation of use", *Licari v. Elliott,* 441 N.E.2d 1088, 1091, 57 N.Y.2d 230, 236 (1982). *See also Clifford v. Burlington Motor Carriers, Inc*., 2008 WL 268289, at *6 (E.D.N.Y. Jan. 29, 2008).

To prevail on a motion for summary judgment under the serious injury provisions of the No-Fault Law, a defendant must first establish a prima facie case that the plaintiff has not sustained a "serious injury" as defined by Section 5102(d). *See Gaddy v. Eyler*, 591 N.E.2d 1176, 1177, 79 N.Y.2d 955, 956-57 (1992). In order to meet this burden, a defendant may rely on unsworn reports by plaintiff's physicians, see *McGovern v. Walls,* 201 A.D.2d 628, 607 N.Y.S.2d 964, 965 (2d Dep't 1994), or sworn affidavits or affirmations by defendant's own

---

[4] While plaintiffs claim that their injuries are "permanent" they do not seem to argue that their injuries would fall under category (6), "permanent loss of use of a body organ, member, function or system." For example, in defendant's memorandum of law, defendant states that "plaintiffs have not sustained a permanent loss of use of a body organ, member, function or system." Docket Entry 20, Defendant's Memorandum of Law, at pp. 2-3. Plaintiffs do not dispute this assertion. Moreover, plaintiffs point out that "a serious and permanent injury does not require proof of a *total loss* of an organ, member or function . . ." (Docket Entry 24, Plaintiffs' Memorandum in Opposition, at pp. 4-5 (emphasis added)), which leads this Court to conclude that plaintiffs do not contend that category (6) applies.

8

retained physicians, see *Marsh v. Wolfson*, 186 A.D.2d 115, 115-16, 587 N.Y.S.2d 695, 696 (2d Dep't 1992). The burden then shifts to the plaintiff to overcome defendant's motion by submitting sworn affidavits or affirmations by physicians that support her claim of serious injury. *See Rand v. Volvo Fin. N. Am.*, 2007 WL 1351751, at *11 (E.D.N.Y. May 8, 2007) (internal citations omitted).

To meet that burden, a plaintiff "must submit quantitative evidence from an expert with respect to diminished range of motion or an expert's qualitative assessment, based on objective evidence, comparing [Shamanskaya and Karapetyan's] present limitations to the normal function, purpose and use of the affected body organ, member, function, or system." *Clifford*, 2008 WL 268289 at *7. *See also Toure v. Avis Rent A Car Sys.*, 98 N.Y.2d 345, 350-51, 774 N.E.2d 1197, 1200 (2002). Subjective complaints of pain alone are insufficient to meet the serious injury threshold. *Toure*, 98 N.Y.2d at 350., 774 N.E.2d at 1199-1200. Where there has been a gap or cessation in treatment, a plaintiff must provide some "reasonable explanation" for the gap in addition to objective proof of the injury. *Pommells,* 830 N.E.2d at 283, 4 N.Y.3d at 574. Moreover, the Court of Appeals has noted that when "additional contributory factors" are present that may disrupt the causal link between the accident and the claimed injury, dismissal of the complaint may be appropriate even where the plaintiff has provided objective medical proof of her injuries. *Id.* at 281, 4 N.Y.3d at 572.

## Discussion

Defendant has met his burden by submitting sworn medical reports of Drs. Mendelsohn and Feuer. In his reports, Dr. Feuer states that neither plaintiff suffers from neurological injuries as a result of the March 28, 2004 accident. Docket Entry 17, Exs. L & M. Dr. Mendelsohn's

9

reports attribute Shamanskaya's spinal irregularities to age-related changes and characterizes Karapetyan's MRI as showing only moderate changes not causally related to trauma. *Id*. Exs. J & K. The burden therefore shifts to plaintiffs to establish that a genuine issue of material fact exists as to whether Shamanskaya and Karapetyan sustained serious injuries as a result of the collision.

Plaintiffs have provided objective evidence of a serious injury sufficient to defeat defendant's motion for summary judgment. As discussed above, Shamanskaya has provided an affirmation from Dr. Istkhoki stating that Shamanskaya sustained lumbar disc bulges at L3-L4, L4-L5 and L5-S1, lumbar L5-S1 radiculopathy, a 23% loss of range of motion in her lumbosacral spine, and right knee joint effusion. Karapetyan has also provided an affirmation from Dr. Istkhoki stating that Karapetyan sustained lumbar disc bulge at L4-L5, lumbar L4-L5 radiculopathy on the right and a 26% loss of range of motion in her lumbosacral spine. Dr. Istkhoki's diagnoses for both plaintiffs were based, among other things, on her review of Dr. Garsman's MRI reports and her own range of motion testing. Based on these tests and observations, Dr. Istkhoki concluded that plaintiffs' injuries are permanent and that they are causally related to the accident on March 28, 2004. These findings are sufficient to raise a question of material fact with respect to whether plaintiffs sustained serious injuries. *See, e.g., Toure*, 98 N.Y.2d at 350, 774 N.E.2d at 1200 ("a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury"); *Abedin v. Tynika Motors*, 279 A.D.2d 595, 719 N.Y.S.2d 698, 699 (2d Dep't 2001) (holding that treating orthopedist's affirmation, based upon a recent examination of plaintiff, attesting to quantifiable limitations in motion in the cervical and lumbar spine was sufficient to defeat summary judgment); *Rand*, 2007

WL 1351751, at *12 ("[W]hile there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes." (quoting *Hodder v. United States*, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004))).

Moreover, the cases relied on by defendant are distinguishable. For example, defendant correctly notes that in *Pierre v. Nanton*, 279 A.D.2d 621, 719 N.Y.S.2d 706 (2d Dep't 2001), the court held that evidence of a disc herniation, without objective tests to measure alleged range of motion restriction, was not, in and of itself, a serious injury. In this case, however, plaintiffs' treating doctor performed and explained the requisite objective tests. Defendant argues that plaintiffs' claims should nevertheless be dismissed because: 1) the evidence that plaintiffs rely upon is inadmissible, 2) plaintiffs have not adequately explained why they discontinued treatment for their alleged injuries, and 3) plaintiffs failed to rebut defendant's claim that their injuries were pre-existing and not caused by the March 2004 accident. Defendant also argues that Karapetyan's claim should be dismissed because Karapetyan has failed to explain the effect of her subsequent accident on her alleged injuries.

Each of defendant's arguments is without merit, at least for the purposes of summary judgment. First, the evidence presented by plaintiffs is in admissible form. Plaintiffs have submitted sworn affirmations from their treating physician detailing the tests she performed and detailing her findings. *See, e.g. Gaddy*, 561 N.E.2d at 1177, 79 N.Y.2d at 957 (accepting affidavits and medical reports from treating physician as admissible evidence); *Rand*, 2007 WL 1351751, at *11 (plaintiff's claim of serious injury must be supported by "admissible evidence, in the form of sworn affidavits or affirmations by physicians"). Defendant contends that Dr.

11

Itskhoki's conclusions are inadmissible because they are based upon the unsworn medical records of radiologist Dr. Garsman. In support of this claim, defendant cites to a state law case which in fact seems to hold that a physician's affirmation may not rely upon the unsworn medical reports of another physician. *See Figueroa v. Westbury Trans, Inc.*, 304 A.D.2d 614, 757 N.Y.S.2d 756 (2d Dep't 2003). However, because this action was removed to federal court, federal procedural and evidentiary rules apply. *Rand*, 2007 WL 1351751, at *13 (collecting cases). Under Federal Rule of Evidence 703, plaintiff's expert, Dr. Itskhoki, may base her affirmed report on facts "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, [and] the facts or data need not be admissible in evidence . . . ." Thus, in federal court proceedings, "it is common for treating physicians to rely on the interpretive reports of radiologists in making diagnoses without viewing the underlying scans themselves or requiring the radiologists to file affidavits." *Id.* (quoting *Nassrallah v. Helio De*, 1998 WL 152568, at *7 (S.D.N.Y. Apr. 2, 1998)).

Second, plaintiffs have provided a reasonable explanation for why they discontinued treatment for their injuries. In her affirmations, Dr. Itskhoki states that, at the time both plaintiffs ceased treatment, further therapy would be "futile" and that complete rehabilitation was unlikely. Physician's Aff. re: Shamanskaya ¶ 8; Physician's Aff. re: Karapetyan ¶ 8. The Court of Appeals has held that such an explanation for the cessation of physical therapy is sufficient to withstand a defendant's motion for summary judgment.[5] *Compare Pommells [Brown v.*

---

[5] Defendant argues that Dr. Istkhoki's explanation is insufficient because statements in her narrative reports contradict those in her affirmations. For example, in reports dated October 24, 2004 and June 17, 2008, Dr. Istkhoki recommended that Shamanskaya undergo further physical therapy for pain reduction and noted that the regimen is "essential to minimize the degree of permanent residuals experienced by Mrs. Shamanskaya." Reply Decl., Exs. B & C.

*Dunlap]*, 830 N.E.2d at 387, 4 N.Y.3d at 577 (finding that a plaintiff sufficiently explained the gap in treatment to survive a summary judgment motion where the plaintiff's treating physician determined that "further medical therapy would 'be only palliative in nature'") *with Pommells*, 830 N.E.2d at 385, 4 N.Y.3d at 574 (affirming summary judgment for defendant where plaintiff provided no explanation for why he ceased physical therapy six months after the accident and sought no additional treatment until years later).

Third, plaintiffs have sufficiently rebutted defendant's claim that their injuries were related to pre-existing conditions and not to the accident. Defendant bases his claim on the affirmed reports of Dr. Mendelsohn, who found that Shamanskaya's MRI revealed "age related lumbar degenerative changes" and that Karapetyan's MRI revealed "degenerative changes" in her lumbar spine. Dr. Mendelsohn concluded that neither injury was causally related to trauma. In opposition, as noted above, plaintiffs submitted affirmed reports of their treating physician, Dr. Istkhoki, who also reviewed the MRIs and performed objective tests on the plaintiffs, which indicated to her that plaintiffs' injuries were causally related to the accident on March 28, 2004. Moreover, Shamanskaya testified that she never suffered from back or knee pain prior to the accident (Docket Entry 17, Ex. E at 51), and Karapetyan testified that she had not had back pain

---

However, in her affirmation dated July 28, 2008, Dr. Istkhoki states that after Shamanskaya's initial six months of physical therapy, Dr. Istkhoki determined that further physical therapy would be "futile" and recommended that Shamanskaya continue with "home therapy and exercise." Physician's Aff. re: Shamanskaya ¶ 8. While the Court agrees that the reports are somewhat contradictory, it is not for the Court to resolve these ambiguities or to make credibility determinations on a motion for summary judgment. *See Stampolis v. Provident Auto Leasing Co.,* 586 F. Supp. 2d 88, 92 (E.D.N.Y. 2008) ("The court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004))).

for ten years prior to the accident (Docket Entry 17, Ex. F at 34-35).

The conflict in the medical opinions of the parties' experts, particularly when considered together with the testimony of each plaintiff, is sufficient to raise an issue of material fact as to whether plaintiffs' injuries were pre-existing or whether they were causally related to the accident; thus, the claims may not be dismissed on summary judgment. *See Clifford*, 2008 WL 268289, at *8 ("Conflicting medical opinions create a triable issue of fact concerning whether a plaintiff sustained a 'serious injury' within the meaning of section 5102(d) of the No-Fault Law."). *See also, Pommells [Brown v. Dunlap]*, 830 N.E.2d at 387, 4 N.Y.3d at 577-78 (reversing dismissal of complaint where defendant's expert provided only a "conclusory notation" that plaintiff's condition might be chronic and where other doctors acknowledged that plaintiff's injuries were caused by the accident).

Finally, the fact that Karapetyan was involved in a subsequent accident is not a basis for dismissing her claim. On October 8, 2007, Karapetyan was involved in another motor vehicle accident and was examined by Dr. Istkhoki on October 12, 2007. Although Dr. Istkhoki's narrative report of October 12 states that Karapetyan "did not have similar complaints before the [second] accident" it is unclear exactly which complaints Dr. Istkhoki is referring to; her report describes, among other things, insomnia, loose teeth, headaches, nausea and dizziness. Docket Entry 17, Ex. N. Moreover, as noted above, in a report dated June 17, 2008, Dr. Istkhoki concluded that Karapetyan was still suffering from injuries resulting from the accident at issue in this case, and acknowledged that Karapetyan's lower back pain was aggravated by the subsequent accident. *Cf. Crawford v. Southland Transp. Co.*, 2008 WL 4452382, at *9 (S.D.N.Y. Oct. 1, 2008) (granting summary judgment in favor of defendant on the ground that,

among other things, there was "no indication" that plaintiff's doctors were even aware of the subsequent accident); *Jules v. Calderon*, No. 020706, slip op. at 3 (N.Y. Sup. Ct. Feb. 13, 2008) (granting summary judgment in favor of defendant where plaintiff did not claim "aggravation of any previously existing condition thus attributing all of his injuries [from subsequent accidents] to this accident"). Finally, Karapetyan herself testified that she was still experiencing back pain as a result of the March 2004 accident up until the time of the second accident on October 8, 2007. Docket Entry 17, Ex. F at 56-57. Accordingly, a triable issue of fact exists as to the effect of each accident on Karapetyan's injuries, and summary judgment is therefore not appropriate on this ground.

## Conclusion

The conflicting medical opinions presented by the parties create a genuine issue of material fact as to whether Shamanskaya and Karapetyan sustained "serious injuries" within the meaning of Section 5102(d) of the No-Fault Law, whether the injuries were causally related to the March 28, 2004 accident, and, in the case of Karapetyan, the effect of her subsequent accident on her alleged injuries. Accordingly, defendant's motion for summary judgment is denied.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**July 24, 2009**

                                                /s/
                                    **STEVEN M. GOLD**
                                    **United States Magistrate Judge**